Parkchester Beach Club Corp. v. Commissioner.
Parkchester Beach Club Corp. v. Commissioner
Docket No. 95409.
United States Tax Court
T.C. Memo 1963-231; 1963 Tax Ct. Memo LEXIS 113; 22 T.C.M. (CCH) 1175; T.C.M. (RIA) 63231; August 28, 1963
Howard A. Rumpf, 11 W. 42nd St., New York, N. Y., for the petitioner. James Q. Smith, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: Respondent determined deficiencies in petitioner's income tax and an addition to tax for the years and in the amounts as follows: Addition under
Year ended
sec. 6651(a),
March 31
Deficiency
I.R.C. 1954
1954
$32,028.15
1955
12,812.02
1956
1,732.64
1957
57,388.46
$8,608.27
The issues presented for our decision are the correctness of the respondent's action in determining (1) that certain amounts received by petitioner *114 as membership dues and rental fees for the use of its recreational facilities constitute taxable income for the years of receipt, and (2) that the petitioner is liable for an addition to tax under section 6651(a) of the Internal Revenue Code of 1954 for failure to file a timely income tax return for the taxable year ended March 31, 1957. General Findings of Fact A portion of the facts have been stipulated and are found accordingly. Petitioner is successor to a corporation organized under the laws of the State of New York in 1951 under the name of Big Tree Farm, Inc. Its principal place of business is located in the Borough of the Bronx, New York City. It filed its income tax returns for its fiscal years ended March 31, 1954, 1955, 1956, and 1957 with the director of the Upper Manhattan district, New York. On March 26, 1953, Big Tree Farm, Inc., purchased certain property from Parkchester Beach Club, Inc., and thereafter changed its name to Parkchester Beach Club Corp., sometimes hereinafter referred to as Parkchester or petitioner. Petitioner had 100 shares of capital stock outstanding, 51 of which were owned by its president, M. Mal Deitch, and 49 *115 were owned by Joseph Goodstein, its secretary. Issue 1. Advance Membership Dues and Rental Fees Findings of Fact During the period March 26, 1953, through March 31, 1957, petitioner owned more than 30 acres of real property in the Borough of the Bronx, New York City. Petitioner utilized this property in the operation of its business of furnishing park and recreational facilities, including a beach, swimming pool, picnic area, tennis courts, handball courts, basketball courts, a cafeteria, lunch stands, etc. Parkchester's facilities are available for use from May 30 of each year until the Sunday following Labor Day, and are closed during the balance of the year. The recreational facilities provided by petitioner are available only to members of Shorehaven Beach Club, Inc., sometimes hereinafter referred to as Shorehaven, a nonprofit membership corporation organized under the laws of the State of New York in 1948. M. Mal Deitch and Joseph Goodstein are charter members of Shorehaven. The principal reason for the formation of Shorehaven was compliance with a local zoning ordinance which prohibits the use of the Parkchester property for business purposes. In practice petitioner *116 acted as a soliciting and collection agent for memberships in Shorehaven. The membership dues collected by petitioner were deposited by it in its regular bank account and commingled with its general funds until September 1956 when a special bank account was opened by Parkchester for the deposit of prepaid membership dues received prior to March 1, 1957. From a bookkeeping standpoint petitioner and Shorehaven established a rental arrangement whereby Shorehaven leased the Parkchester property from petitioner in return for a certain rental which was allocated to it on the books of the two corporations. It was the practice of Parkchester and Shorehaven, after the final audit of their books following March 31 of each year, to treat the bookkeeping profit appearing on the books of Shorehaven as rental income to petitioner. In actuality, petitioner and Shorehaven were the same operating entity with respect to the Parkchester property at all times here material. Applications for membership in Shorehaven Beach Club, Inc., during 1954, 1955, 1956, and 1957 were submitted on a printed envelope. Upon acceptance by Shorehaven, the envelope applications reflected the membership agreement. The *117 face of the printed envelopes used by Shorehaven contained the following form: SHOREHAVEN BEACH CLUB Soundview Avenue overlooking the River Bronx, New York
"I hereby apply for membership in the Shorehaven Beach Club, Inc. I agree that this application is subject to the approval of the Membership Committee, and if accepted I will abide by all the rules and regulations promulgated by the club. Any payment made by me will not be refunded unless my application is rejected." Pass No…. Roomette No…. Date… Name… Age… Sex… (please print) Address… Home Phone… Occupation… Proposed by 1 2 X Signature of Applicant Throughout the years 1954 to 1957, inclusive, Shorehaven charged membership dues of $10 per year. The members of Shorehaven were entitled to the use of all of the facilities of Parkchester during the period May 30 until the Sunday following Labor Day of each year. In addition to the $10 annual membership fee, members were charged separately for the rental of roomettes and lockers and for food served in the cafeteria and lunch stands. During the years 1954 to 1957, inclusive, each of the members of Shorehaven was issued a receipt book, the *118 cover of which typically read as follows: SEASON 1963 [1] RECEIPT BOOK. For All 1962 Members who registered by Sept. 30, 1962, and are paid in full by April 1st, 1963 the Total Fees and rentals shall be $70.00 for Adults and $50.00 for Children under age 12. For All Others the total is $75.00 for Adults and $50.00 for Children, payable by May 1st, 1963. THIS BOOK AND DEPOSIT ARE NOT TRANSFERABLE. THERE SHALL BE NO RIGHT TO REFUND OF DEPOSIT. AFTER MAR. 1, 1963. ALL DEPOSITS SHALL BE FORFEITED, IF BALANCE IS NOT PAID IN FULL BY MAY 1, 1963 THIS IS MERELY A RECEIPT BOOK AND NOT VALID FOR ADMISSION TO THE CLUB. It was the practice of petitioner to issue to each of its patrons the following typical notice during the years here pertinent: A deposit reserves only your space in the roomette, and not the entire roomette. 1959 n1 members who register before October 1, 1959 and pay in full on or before April 1, 1960 shall receive an allowance of $5.00. After you register, payments can be made by mail (enclose your check or money-order with receipt book.) NO REFUNDS OR TRANSFERS AFTER MAR. 1, 1960. Because of the great demand *119 for Parkchester's facilities many of its patrons paid their $10 annual membership dues early in the fall of the year so as to reserve roomettes or lockers for the coming season, commencing on May 30 of the following calendar year. During the period March 31, 1953 to March 31, 1957, inclusive, the income of Parkchester consisted of membership dues, roomette and locker rentals, receipts from the sale of food and beverages, and guest admission fees. Petitioner made refunds of roomette, locker room payments, and membership dues as follows: Year ended
March 31
Refunds
1954
$ 872.00
1955
1,575.54
1956
2,100.60
1957
4,114.98
Petitioner kept its books and filed its income tax returns on an accrual method of accounting using a fiscal year ending on March 31. On their income tax returns for the taxable years ended March 31, 1954 to 1957, inclusive, petitioner and/or Shorehaven reported membership dues, daily guest admission fees, and roomette and locker rentals for the past season. Petitioner did not report on its returns for those years the receipt of membership dues and roomette and locker rentals paid in advance for the use of the Parkchester facilities during *120 the coming season to commence on May 30 of the following calendar year. In his notice of deficiencies, the respondent made an adjustment in petitioner's taxable income for each of the taxable years ended March 31, 1954 to 1957, inclusive, requiring the inclusion in its gross income for the years of receipt of the advance membership dues and roomette and locker rentals received by petitioner and properly adjusting the years in which such amounts had been reported. Opinion The respondent has determined that the amounts received by petitioner as advance membership dues and fees paid for the rental of the roomettes and lockers provided by Parkchester Beach Club Corp. constitute taxable income to it, an accrual basis taxpayer, for the year of receipt. Petitioner claims that such amounts did not represent taxable income until its facilities became available on May 30 of the following year and it was thereafter obligated to render some type of service to its patrons. It is clear from the record before us that, upon the acceptance by Shorehaven Beach Club, Inc., of an application for membership, a contract of membership was created. Because of the great demand for petitioner's facilities, *121 many of its patrons and prospective patrons submitted membership applications and paid their annual membership dues, as well as rental fees for the use of roomettes and lockers, early in the fall of each year in order to reserve the use of the Parkchester recreational facilities for the coming season. It was petitioner's practice until September 1956 to deposit such receipts in its general bank account, commingling them with its general funds. The evidence presented discloses that petitioner at all times had the complete control and the unrestricted use of such advance membership and rental payments. It is axiomatic that an accrual basis taxpayer who receives money under a claim of right and without restriction as to its use or disposition has realized income taxable to him for the year of receipt. Healy v. Commissioner, 345 U.S. 278. This is true despite the fact that the recipient subsequently may be required to refund a portion or all of the amounts so received. North American Oil v. Burnet, 286 U.S. 417. The petitioner contends that, in the case of an accrual basis taxpayer, cash receipts, to constitute taxable income, must be correlated with the *122 rendering of services. It is petitioner's position that an accrual basis recipient at least must be immediately obligated to perform some kind of service upon demand by the patron in consideration for the cash received, and that since none of Parkchester's facilities were available until May 30 of each year, the membership dues and other fees received prior to that time cannot constitute taxable income. This contention was considered and rejected by the Supreme Court in American Automobile Assn. v. United States, 367 U.S. 687, affirming 181 F. Supp. 255, rehearing denied 368 U.S. 870. The issue there was whether, under a method of accounting purportedly designed properly to reflect income, advance receipts, representing the payment of membership fees for services to be rendered in the future, constituted income at the time of receipt or should only be regarded as income in the future ratably as the available services were rendered. In that case the argument was made that, although the prepaid membership dues were held by the taxpayer without restriction, they could not constitute income until the available services were rendered by the taxpayer. *123 The Supreme Court there held that, despite the fact that the taxpayer utilized an accrual method of accounting, Congress has refused to permit the deferral of cash receipts to a subsequent year so as to correlate such advance receipts with the recipient's obligation to render services. The membership dues there in question were accordingly held to be reportable by the accrual basis taxpayer for the year of receipt. Cf. Mark E. Schlude v. Commissioner, 372 U.S. 128. A similar issue was presented to us in Automobile Club of New York, Inc., 32 T.C. 906, affd. 304 F. 2d 781, in which we held that advance membership fees could not be deferred by an accrual basis taxpayer until the year in which the payments were earned, but must be reported in the year of receipt, stating as follows, at page 913: But where there is actual receipt and the funds are at the unrestricted disposal of the taxpayer, as is the case here, all the events have already occurred that call for accrual. It has not been the practice in tax accounting to enter upon a further inquiry as to whether the income has been "earned" in order to defer the reporting of such income to a *124 later year. The practical difficulties in embarking upon such inquiry and the burden of making the necessary allocations of the amounts of income which, though realized in the taxable year, would have to be charged in part to the taxable year and in part to other years, make clear why no such system has ever been part of the general scheme of our tax laws. * * * In our opinion, American Automobile Assn. v. United States, supra, and Automobile Club of New York, Inc., supra, are dispositive of the question presented here and, under the holdings of those decisions, we sustain the respondent's determination that the membership dues and rental fees in issue are properly reportable by petitioner for the year of receipt. Issue 2. Addition to Tax for Failure to File Timely Return Findings of Fact On or about June 16, 1957, petitioner executed and mailed an application (Form 7004) for an extension of time to file its corporation income tax return for its fiscal year ended March 31, 1957. The application was received in the office of the director for the Upper Manhattan district on or about June 24, 1957, and was denied. Petitioner filed its income tax return *125 for the fiscal year ended March 31, 1957, on or about September 16, 1957. In his notice of deficiencies, the respondent determined an addition to tax in the amount of $8,608.27 because of petitioner's failure to file a timely income tax return for the taxable year ended March 31, 1957. Ultimate Finding Petitioner's failure to file a timely income tax return for the taxable year ended March 31, 1957, was due to wilful neglect and was not due to reasonable cause. Opinion Petitioner's income tax return for the taxable year ended March 31, 1957, was required to be filed on or before June 15, 1957. Section 6072(b), I.R.C. 1954. Its return for that year was not filed until September 16, 1957. On June 16, 1957, petitioner executed and mailed an application for extension of time within which to file its return, which the respondent denied. Although the testimony presented at the trial indicates that prior to June 15, 1957, petitioner's accountant prepared an application for an extension of time and left it on the desk of M. Mal Deitch, petitioner's president, for his signature and mailing, it is clear from the record that it was not mailed prior to June 16, 1957, and *126 petitioner has failed to establish the reason for the untimely filing of its return. In view of the absence of any evidence of reasonable cause, we must sustain the respondent's determination that petitioner is liable for an addition to tax under section 6651(a) of the 1954 Code in the amount of $8,608.27. Decision will be entered for the respondent. Footnotes
1. All dates as used in the exhibit.↩