formance. Under their agreement with Mr. Toledo, Toledo was given all the powers necessary for performance, and plaintiffs retained no right to control Mr. Toledo's actions, since they gave him power of attorney to act in their place and stead. In such a situation, the Government, to obtain effective performance of the contract, would be forced to deal with Mr. Toledo since the plaintiffs had rendered themselves powerless to give any satisfaction. All dealings with regard to supervision, inspection, etc., had to be with him, and not with the contractor. We believe that it was precisely this type of transfer which is prohibited by 41 U.S.C.A. § 15, and we so hold.

The plaintiffs' petition is dismissed.

It is so ordered.

JONES, Chief Judge, and LARAMORE and MADDEN, Judges, concur.

## AMERICAN AUTOMOBILE ASSOCIATION

### v.

### UNITED STATES.

### No. 311–58.

United States Court of Claims.

March 2, 1960.

Fleming Bomar, Washington, D. C., for the plaintiff. Joseph E. McAndrews and Ivins, Phillips & Barker, Washington, D. C., were on the brief.

Jerry M. Hamovit, Washington, D. C., with whom was Asst. Atty. Gen., Charles K. Rice, for the defendant. James P. Garland and Lyle M. Turner, Washington, D. C., were on the brief.

JONES, Chief Judge.

The plaintiff, a motor club, seeks to recover Federal income taxes and assessed interest paid for the calendar years 1952 and 1953. The issue to be decided here involves the tax treatment to be accorded the prepaid income of an accrual basis taxpayer. The problem arises because club membership dues are paid to the taxpayer for 12 months in advance.

Plaintiff is a national organization which renders services to affiliated local

automobile clubs and their members and performs services of a public nature in fields relating to motoring and travel. In addition to its activities as a national organization, the plaintiff operates directly, as divisions, ten local automobile clubs. A substantial portion of the annual gross income of plaintiff is derived from dues, prepaid for one year in advance, received from members of the automobile clubs operated as divisions of the plaintiff.

Plaintiff provides services for the members of the local divisions over the 12-month period following payment of dues. These services, although not completely uniform, generally included the following: (a) A travel service which included trip planning, tour books, accommodation directories, maps and recommended routes; (b) emergency road service which consisted of towing, changing tires, replacing batteries and other minor repairs; the road service was provided by plaintiff through contracts made with garages and service stations in the areas served by its divisions; (c) bail bond protection up to $5,000 through contracts made by the plaintiff with bondsmen; (d) personal automobile accident insurance; (e) a theft reward offered by the plaintiff for information leading to the arrest and conviction of any person stealing a member's car; (f) in addition, the plaintiff, in one or more of its divisions, provided other personal services for members which included procuring motor licenses, notarial services, brake and headlight adjustments, and advice on how to prepare and file papers in small claims courts.

The prepaid dues collected from members of its divisions were deposited in plaintiff's bank accounts with no restrictions as to their use for any of its corporate purposes. However, the dues upon collection were reflected in a liability account designated "Deferred Revenue—Membership Dues." Thereafter, a pro rata part of the dues was removed from the liability account and reflected in an "income" account. Dues collected from members who joined in the month of January were recognized as income in January only to the extent of $\frac{1}{24}$ (a half of $\frac{1}{12}$) of such collections, on the assumption that the average or mean date of the January collections would be the middle of the month.[1] Thereafter, $\frac{1}{12}$ of the dues collected in January was taken out of the liability account and credited to income in each of the following 11 months (i.e., February through December). The remaining $\frac{1}{24}$ of the dues collected in January was kept as a liability in the "Deferred Revenue—Membership Dues" account on December 31, but was subsequently recognized as income for January of the following year.

Dues collected in each of the other months of the calendar year were treated in the same manner. That is, $\frac{1}{24}$ of each month's collections was recognized as income in the first month of membership, $\frac{1}{12}$ of the amount paid was recognized as income in each of the following eleven months, and the remaining $\frac{1}{24}$ was allocated to income in the month when membership expired. Commencing in 1954, the plaintiff, in order to simplify internal accounting detail, changed its procedure in the monthly accounting for dues by assigning 50 percent of the dues to income for the current year and allocating the other 50 percent as a liability which matured as income in the following tax year.

In preparing its income tax returns for the years in suit, plaintiff, an accrual basis taxpayer, excluded from the income received in each year that portion of membership dues which remained in the liability account ("Deferred Revenue—Membership Dues") at the end of the taxable year. It thus treated dues as income ratably over the 12-month period of membership, whether or not such period extended beyond the close of its taxable year.

Expenses which plaintiff considered to fall within the category of prepaid membership costs, e. g., salesmen's commis-

1. Plaintiff's taxable year was the calendar year.

sions and the cost of accident insurance covering the period of a membership, even though paid by plaintiff, were not deducted entirely in the taxable year paid or incurred, but instead were deducted ratably over the same periods of time that dues were recognized as income.

The income reported by plaintiff in its tax return for the calendar year 1953 attributable to dues received from members of its divisions was $3,337,813.44, representing $1,562,042.23 of prepaid dues collected in 1952 but not recognized as income until 1953, plus $1,775,771.21 of dues collected in 1953 and recognized as income in that year.

For 1954, dues reported by plaintiff as income for purposes of the Federal income tax totaled $3,794,672.20, representing $1,755,407.46 of advance dues collected in 1953 but not recognized as income until 1954, plus $2,039,264.74 of dues collected in 1954 and recognized as income in that year.

Plaintiff claimed that as a result of a 1954 net operating loss in the amount of $289,967.67, it was entitled to a net operating loss carryback *deduction* in 1952 in the amount of $154,411.11, and a net operating loss carryback *deduction* in 1953 in the amount of $135,556.56. Upon examination of the plaintiff's Federal income tax returns for the calendar years 1952, 1953, and 1954, the Commissioner of Internal Revenue disallowed plaintiff's deferral of income from one year to another, for years subsequent to 1953, thereby increasing plaintiff's 1954 net operating income from $353,279.09 to $481,557.59 and reducing plaintiff's 1954 net operating loss from $289,967.67 to $14,412.49. The net effect of the Commissioner's determination was to reduce plaintiff's net operating loss carryback deduction to $14,412.49 in 1952 and to eliminate entirely any net operating loss carryback deduction in 1953.

The issue to be decided by this court is whether the Commissioner of Internal Revenue correctly determined that plaintiff's method of accounting—with respect to dues received from members of its divisions—does not clearly reflect plaintiff's income within the meaning of § 41 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 41, and § 446 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 446. Section 41 required that "the net income shall be computed * * * in accordance with the method of accounting regularly employed in keeping the books * * * but * * * if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income * * *." [2]

The Commissioner of Internal Revenue disallowed the deferral of income from one year to another on the ground that prepaid dues received under a "claim of right," without restriction as to their disposition, represents income in the year of *receipt* and should be taxed in that year regardless of the method of accounting employed by the taxpayer. This position is based on the claim of right doctrine enunciated by the Supreme Court in North American Oil Consolidated Co. v. Burnet, 1932, 286 U.S. 417, 424, 52 S.Ct. 613, 76 L.Ed. 1197. It is of course fairly obvious that, once it is determined that prepaid income is required to be included in income in the year of receipt under the claim of right doctrine, it would necessarily follow that any other method of reporting would not "clearly reflect the income."

The opposite view, advanced by the plaintiff—that the claim of right doctrine does not relate to the question whether items that admittedly belong to the taxpayer may be attributed to a taxable year other than that of receipt

---

**2.** To the same effect, § 446, Int.Rev.Code of 1954, provides that: "Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books." However, "if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary or his delegate, does clearly reflect income."

in accordance with principles of accrual accounting—has been succinctly presented by Mr. Justice Harlan, dissenting in Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 191–192, 77 S.Ct. 707, 1 L.Ed.2d 746.[3]

However, we do not find it necessary to resolve this issue, since we agree with the Government's contention that the method of treatment of prepaid automobile club membership dues employed by the plaintiff was dealt with by the Supreme Court in Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, rehearing denied, 1957, 353 U.S. 989, 77 S.Ct. 1279, 1 L.Ed.2d 1147, and was held to be, at least for Federal income tax purposes, "purely artificial." In the Automobile Club of Michigan case prepaid membership dues were credited upon receipt to an account carried as a liability and designated "Unearned Membership Dues." *"During the first month of membership and each of the following eleven months one-twelfth of the amount paid [was] credited to an account designated 'Membership Income.'* This method of accounting was followed by petitioner [a motor club] from 1934. The income from such dues reported by petitioner in each of its tax returns for 1943 through 1947 was the amount credited in the year to the 'Membership Income' account." 353 U.S. at page 188, 77 S.Ct. at page 712. (Emphasis supplied.)

The Commissioner of Internal Revenue had determined that this method of accounting—which is essentially the same method used by the plaintiff in the case at bar—did not clearly reflect income. The Supreme Court, in affirming the action of the Commissioner, stated

(353 U.S. at pages 189–190, 77 S.Ct. at page 712):

"The petitioner does not deny that it has the unrestricted use of the dues income in the year of receipt, but contends that its accrual method of accounting clearly reflects its income, and that the Commissioner is therefore bound to accept its method of reporting membership dues. We do not agree. * * * *The pro rata allocation of the membership dues in monthly amounts is purely artificial and bears no relation to the services which petitioner may in fact be called upon to render for the member.* Section 41 vests the Commissioner with discretion to determine whether the petitioner's method of accounting clearly reflects income. We cannot say, in the circumstances here, that the discretionary action of the Commissioner, sustained by both the Tax Court and the Court of Appeals, exceeded permissible limits. See Brown v. Helvering, 291 U.S. 193, 204–205, 54 S.Ct. 356, 361, 78 L.Ed. 725." [Emphasis supplied.]

Although it would appear that Automobile Club of Michigan does not expressly rule out deferral of income,[4] we are constrained to interpret this language as a rejection by the Supreme Court of the accounting method advanced by plaintiff in the case at bar.

We are influenced in our decision by the language used by the Court to distinguish on their facts Beacon Publishing Co. v. Commissioner, 10 Cir., 1955, 218 F.2d 697 (deferral of prepaid magazine subscription income) and Schuessler v. Commissioner, 5 Cir., 1956, 230 F.2d

---

3. "[The claim of right] doctrine, it seems to me, comes into play only in determining whether the treatment of an item of income should be influenced by the fact that the right to receive or keep it is in dispute; it does not relate to the entirely different question whether items that admittedly belong to the taxpayer may be attributed to a taxable year other than that of receipt in accordance with principles of accrual accounting." (Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 191–192, 77 S.Ct. 707, 714, 1 L.Ed.2d 746 (dissenting opinion).)

4. See Automobile Club of Michigan v. Commissioner, 353 U.S. at pages 192–193, 77 S.Ct. at page 714 (dissenting opinion).

722 (reserves set up to meet future costs):

> "In Beacon, performance of the subscription, in most instances, was, in part, *necessarily* deferred until the publication dates after the tax year. In Schuessler, performance of the service agreement required the taxpayer to furnish services at *specified times* in years subsequent to the tax year. In this case [as in the case at bar], substantially all services are performed only upon a *member's* demand and the taxpayer's performance was not related to *fixed dates* after the tax year. We express no opinion upon the correctness of the decisions in Beacon or Schuessler."[5]

But regardless of the underlying basis for the Court's rejection of "the pro rata allocation of the membership dues in monthly amounts" as "purely artificial," we feel constrained by the decision in Automobile Club of Michigan to reject that same method of accounting for tax purposes in the case at bar.[6]

The plaintiff is therefore not entitled to recover and its petition will be dismissed.

It is so ordered.

LITTLETON, (Retired), LARAMORE and MADDEN, Judges, concur.

WHITAKER, Judge (concurring).

From the enactment of the Corporation Excise Tax Act of 1909 and the first income tax act in 1913, it has been universally supposed that in order to "clearly reflect income" the taxpayers' accounting method must treat as gross income amounts received or accrued in the taxable year, with certain exceptions specified in the Code. The income under consideration here was received in plaintiff's taxable year. Plaintiff's method of accounting treats a portion of that income as not having been received in the taxable year and, thus, does not clearly reflect its income, unless it comes within the statutory exceptions. Those exceptions are, for example, reserves for depreciation, obsolescence, and depletion, and, in the case of insurance companies prepaid premium reserves. The statute does not allow the deduction of reserves to anticipate expenses of meeting the demands of plaintiff's membership. What plaintiff, in effect, seeks to do is to deduct such a reserve from the income it received within the taxable year.

I also concur in the majority opinion.

**NEW JERSEY AUTOMOBILE CLUB**
**v.**
**UNITED STATES.**
No. 274-54.

United States Court of Claims.
March 2, 1960.

---

5. Automobile Club of Michigan v. Commissioner, 353 U.S. at page 189, fn. 20, 77 S.Ct. at page 712. (Emphasis supplied.)

6. Cf. Bressner Radio, Inc. v. Commissioner, 267 F.2d 520, 528–529 (2d Cir. 1959); Automobile Club of Southern California v. United States, Civil No. 1169–58, S.D.Cal., January 22, 1960.