**Kenneth L. and Catherine
S. MULHOLLAND,
Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**No. 645–85T.**

United States Claims Court.

April 20, 1992.

Richard M. Squire, Philadelphia, Pa., attorney of record for plaintiffs.

William K. Drew, Washington, D.C., with whom was Acting Asst. Atty. Gen. James A. Bruton, for defendant.

## OPINION

### REGINALD W. GIBSON, Judge:

This individual tax refund case is before the court on defendant's second motion for summary judgment. Plaintiffs did not file

a cross-motion as they emphatically contend that there are genuine issues of material fact. Jurisdiction in this court is premised on section 6532(a)[1] and section 7422(a)[2] of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6532(a) and 7422(a), and the Tucker Act, 28 U.S.C. § 1491.[3]

While the complaint, as filed, averred three counts, only Counts II and III were the subject of previous cross-motions for partial summary judgment by the parties, filed on January 23, 1987, and March 30, 1987, respectively. With respect to Count II, in its opinion dated January 30, 1989, the court granted defendant's motion for summary judgment, but as to Count III, the court denied *both* the plaintiffs' and the defendant's motions inasmuch as it *found* that there were genuine issues of material fact. *Mulholland v. United States,* 16 Cl. Ct. 252, 265 (1989). Count I was not the subject of the parties' cross-motion for partial summary judgment inasmuch as both parties conceded that there were genuine issues of material fact.

In view of the foregoing procedural posture following the court's opinion on the cross-motions for partial summary judgment, Counts I and III were then "ripe" for a trial on the merits. Nevertheless, the defendant filed on January 30, 1990, *without leave of court,* a second "partial" motion for summary judgment which included both Counts I and III therein. For the reasons expressed below, the defendant's second "partial" motion for summary judg-

1. 26 U.S.C. § 6532(a) provides in pertinent part: "Suits by taxpayers for refund.—(1) General Rule.—No suits or proceedings under 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary or his delegate renders a decision thereon within that time, nor after the expiration of 2 years from the date of mailing by certified mail by the Secretary or his delegate to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

2. 26 U.S.C. § 7422(a) provides in pertinent part: "No suit prior to filing claim for refund.—No

suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof."

3. 28 U.S.C. § 1491(a) (1988) states in part: "(1) The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department...."

ment, respecting Counts I and III, shall be DENIED.

*Facts*

We will discuss only those facts pertinent to a ruling on defendant's second partial motion for summary judgment. For a fuller explication of the overall facts in this case, *see* the January 30, 1989 opinion in *Mulholland, supra.*

Kenneth and Catherine Mulholland, plaintiffs/taxpayers herein, filed the instant tax refund suit seeking to obtain a refund of federal income taxes assessed by the Commissioner of Internal Revenue (Commissioner) against their joint individual income tax returns for the taxable years 1981 and 1982. The suit arose because the Commissioner concluded that the method of accounting ·(*i.e.*, the Rule of 78's method [4]) for deducting interest expense employed by Quincy Associates, Ltd. (Quincy), a limited partnership in which Kenneth Mulholland was a limited partner during subject taxable years, resulted in a claimed interest expense deduction in excess of the amount otherwise economically accruable and deductible pursuant to Rev.Rul. 83–84. As a result of this determination, the Commissioner disallowed the excess interest expense deduction on plaintiffs' subject tax returns to the extent that the amount deducted pursuant to the Rule of 78's exceeded the amount allegedly properly deductible under the economic accrual method [5] for said taxable years inasmuch as it did not clearly reflect income. I.R.C. § 446(b).

In April of 1985, the plaintiffs paid the additional tax assessments and filed timely administrative refund claims with the Internal Revenue Service Center in Philadelphia, Pennsylvania. Subject refund claims were later denied on October 17, 1985. Shortly thereafter, the plaintiffs filed their complaint in this court, on October 30, 1985. Therein, they charged in their primary count, Count I, that the Commissioner erred in holding that Quincy was not entitled to deduct interest expenses calculated pursuant to the Rule of 78's method of accounting, because such interest exceeded the amount accruable and deductible under the economic accrual method, *i.e.*, the *rationale* of Rev.Rul. 83–84.[6] In Count II, the plaintiffs averred that the Commissioner's *retroactive* application of Rev.Rul. 83–84, and its simultaneous exemption of a certain group of taxpayers from said provisions, constituted an abuse of discretion under section 7805(b) of the Internal Revenue Code. Lastly, in Count III, plaintiffs alleged that if Quincy is re-

---

4. "The Rule of 78's method [often referred to as the sum-of-the-digits method] is a mechanical *formula* for allocating interest to time periods during the life of a loan." *The Rule of 78's in Light of Revenue Ruling 83–84,* Taxes, April 1985, at 312. Under the Rule of 78's method of allocation, the total amount of interest to be allocated during the life of the loan is multiplied by a fraction, *i.e.*, the number of remaining months to maturity (the numerator) divided by the sum of the number of months in the original term (the denominator). Gertzman, *Federal Tax Accounting* ¶ 3.03[3][a], 3–26 n. 85. When the Rule of 78's method is used to calculate the interest expense deduction, in each succeeding year this reducing fraction is applied to the total interest due, and the product thereof is expensed as interest for the taxable year. *Id.* For a more detailed explanation of the Rule of 78's method, *see* 16 Cl.Ct. at 253 n. 2.

5. The economic accrual method, as embraced by the Commissioner, is set forth in Revenue Ruling 83–84, 1983–1 C.B. 97 (hereinafter Rev. Rul. 83–84). Therein, it is defined as the "true cost" of indebtedness for a given period. More specifically, the true cost of indebtedness is de-

fined as the "effective rate of interest, which is a uniform rate over the term of the loan and is based on the amount of the loan and the repayment schedule provided in the loan agreement, when applied to the unpaid balance of the indebtedness for a given period...."

6. Note that the material facts in the case at bar are substantially identical to those contained in the Tax Court opinion *Prabel v. Commissioner of Internal Revenue,* 91 T.C. 1101 (1988), *aff'd* 882 F.2d 820 (3d Cir.1989). This is so, because the taxpayers therein were also investors in the Quincy Associates partnership. The only difference is that the taxpayers in *Prabel* owned a greater percentage share of the partnership than the taxpayers herein. *Cf. Prabel,* 882 F.2d at 821, with *Mulholland,* 16 Cl.Ct. at 256.

Furthermore, it is important to note that the *Prabel* court resolved subject issues by summary judgment in favor of the defendant. *Prabel,* 91 T.C. at 1120. The court indicated that "[n]o genuine issue exists as to any material fact and respondent [the government] is entitled to summary judgment on this issue as a matter of law." *Id.*

*quired* to change its accounting method for deducting interest expense under the Rule of 78's to the economic accrual method, Quincy is entitled to avail itself of the benefits of the procedures outlined in Revenue Procedure 84–28, 1984–1 C.B. 475 (hereinafter Rev.Proc. 84–28).[7]

Specifically, in this court's opinion of January 30, 1989, it held that, as to Count II, there were no genuine issues of material fact, and defendant is entitled to relief as a matter of law. *Id.* at 265. That is to say, the Commissioner did not abuse his discretion in applying the rationale of Rev.Rul. 83–84 retroactively, nor did he abuse his discretion in exempting a particular group of taxpayers from complying with said ruling. *Id.* at 261–65. Consequently, the court granted defendant's motion for summary judgment with respect to Count II. With regard to Count III, the court found that "genuine issues of material fact are present." *Id.* at 266. The court reached this conclusion based on the conflicting factual positions of the parties, as to *when* the revenue agent "raised" the issue of the propriety of the amount of the interest deductions claimed.[8] Lastly, with respect to Count I, and fully aware that said count was not currently before the court at that time, we "deem[ed] the parties' [knowing] failure to include such count for summary disposition to be a tacit admission that said count raises genuine issues of material fact." *Id.* at 260. Moreover, the court noted that both parties stipulated "that Count I is not currently before the court because of genuine issues of material fact." *Id.* at 254 n. 6.

After finding in favor of the defendant on Count II and unfavorably as to both parties on Count III, the court, in its pretrial order dated August 25, 1989, ordered, *inter alia,* (i) that discovery be completed by October 25, 1989; (ii) that the parties file their Appendix G submissions by December 29, 1989; and, (iii) that the pretrial conference was scheduled for January 8, 1990, at which time a firm trial date would be set. Later, by order of January 22, 1990, the court modified its previous order of October 25, 1989, in that the date of the parties' Appendix G filings was enlarged to February 21, 1990, and that the pretrial conference would be held thereafter on February 28, 1990.

Despite the foregoing explicit procedural posture of the case, the defendant, on January 30, 1990, nevertheless, filed, *without leave of court,* a second motion for summary judgment on the remaining Counts I and III. In said motion, presently before the court, the defendant avers, contrary to its prior stipulation to the court, that there are no genuine issues of material fact as to Count I. This is so because the Commissioner properly determined (pursuant to 26 U.S.C. § 446(b)) that—(i) the Rule of 78's method of accounting utilized for interest expense deductions per return did not clearly reflect the income of Quincy Associates, Ltd. (and ergo subject partners), and (ii) the Commissioner did not abuse his discretion in requiring Quincy to change to the economic accrual method of accounting regarding deductible interest expense beginning with taxable year 1981. Furthermore, with respect to Count III, the defendant avers *for the first time herein* that, contrary to the court's opinion of January 30, 1989,[9] there are no genuine issues of material fact as to Count III because the

---

7. Under Rev.Proc. 84–28, a taxpayer, upon meeting specific procedural requirements, is allowed to allocate an increase in taxable income resulting from a change in accounting method, ratably over one to three years. *See* Rev.Proc. 84–28.

8. "Rev.Proc. 84–28 was promulgated by the Commissioner to 'provide a mandatory procedure for taxpayers to change their method of accounting for interest on indebtedness when they [had] been reporting interest income or deductions in accordance with the Rule of 78's' method. The procedure prohibits its benefits from being realized by 'a *lender or borrower* ... if an issue concerning the amount of reported interest income or claimed interest deduction [had] been *raised and* [was] *pending* on April 2, 1984, in connection with the examination of *the taxpayer's* federal income tax return.'" *Mulholland,* 16 Cl.Ct. at 266 (emphasis added).

9. Therein, as to Count III, "we den[ied] each party's cross-motion for summary judgment ... because we [found] that there are genuine issues of material fact precluding summary relief."

plaintiffs failed to file Form 3115 within the specified time period required by Rev. Proc. 84–28;[10] thus, as a matter of law, it contends that Quincy is not entitled to utilize the benefits of said revenue procedure.[11]

To avoid the dilemma created by this court's prior ruling on Count III and the new issue raised—whether plaintiffs in fact have filed Form 3115—defendant hospitably avers in its current motion for summary judgment that the issue raised in its first partial motion for summary judgment, *i.e.*, "whether an issue [as to the deductibility of plaintiff's interest expense] was raised and pending, within the meaning of the Revenue Procedure, *need not be reached.*" (emphasis added).

*Contentions*

Defendant's motion for summary judgment, as to Count I, artfully avoids the critical issue raised in any such motion, *i.e.*, are there any genuine issues of material fact which will preclude the grant by this court. Instead, and while conceding that— "[w]hether income is clearly reflected by a taxpayer's method of accounting is a question of fact"—defendant nevertheless contends that—"determination of that fact ... is committed to the discretion of the Commissioner." And notwithstanding that there is a § 446(b) issue pending, defendant avers that the issue is *not*—whether taxpayers' method of accounting used clearly reflects income—but is—whether the Commissioner abused his discretion in determining that it did not clearly reflect income. This latter issue, says defendant, is a question of law and not of fact.

With respect to Count III, as previously noted, defendant ignores the law of the

case where this court previously and specifically found genuine issues of material fact, and thereafter postured what it deemed to be a pure legal issue, *supra*.

Conversely, plaintiffs strenuously contend that there are genuine issues of material fact with respect to each count as set forth below.

### I. Count I

#### A. *Defendant*

First and foremost, defendant contends that this court is limited to an abuse of discretion standard of review when passing on the Commissioner's determination that Quincy's income was not clearly reflected in light of its use of the Rule of 78's method of accounting to calculate its interest expense deduction for federal tax purposes. That is to say, argues defendant, the only relevant, essential, and material facts before the court are those in "the record,"[12] *i.e.*, the Revenue Agent's Report (RAR); and the *only* question before the court is—whether the Commissioner acted "clearly unlawful or plainly arbitrary." Moreover, the defendant points out that it is not the role of the court to weigh and determine the relative merits of different accounting systems. The court may only review certain essential material facts when determining whether the Commissioner abused his discretion, *i.e.*, the terms of the debt. In the defendant's opinion, facts such as expert testimony regarding the merits of the Rule of 78's accounting method in clearly reflecting income are not material and, therefore, are not essential to the court's determination.

---

**10.** Defendant contends that plaintiffs were required to file Form 3115 with the Commissioner of the Internal Revenue Service by June 14, 1984, at the very latest, in order to properly utilize the benefits of subject revenue procedure.

**11.** Nowhere in defendant's motion for *partial summary judgment* dated January 23, 1987, did defendant raise the issue—that because the plaintiffs failed to file Form 3115 as required by Rev.Proc. 84–28, they were not entitled to utilize

the benefits therein. In any event, that point also appears to raise fact issues.

**12.** Defendant avers that those facts are as follows:
  (i)   the terms of the involved debt;
  (ii)  the duration of the debt;
  (iii) the amount of the taxpayers' losses;
  (iv)  the accrual of interest under the taxpayers' method of accounting;
  (v)   the accrual of interest under the Commissioner's method of accounting; and
  (vi)  the actual payment made on the debt.

Additionally, according to the defendant, the Commissioner may correct distortions of income if the taxpayer's method of allocating interest expense unduly accelerates its interest deductions by exercising his authority under I.R.C. § 446(b). It is further contended that whether the method of accounting chosen by the taxpayer is clearly reflective of income under § 446(b) depends on whether interest is allocated *in a reasonable manner over the life of the loan,* because any timing difference in the deduction of interest expense is subject to the clear reflection of income requirement of § 446(b). Moreover, the defendant avers that the Commissioner's choice of a method of accounting must be upheld by the court if evidence supports a finding that said method has a rational basis in federal tax policy. Lastly and primarily, if not solely, in light of the Commissioner's expressed opinion in Rev.Rul. 83–84, and the Tax Court's holding in *Prabel,* the defendant avers that Quincy's income, and thus plaintiffs' income, is not clearly reflected due to Quincy's use of the Rule of 78's method of accounting in calculating its interest expense deduction. Accordingly, argues defendant, the Commissioner did not abuse his discretion in changing Quincy's accounting method to the *economic accrual method.*

### B. *Plaintiffs*

The threshold contention of the plaintiffs is that this court is *not* limited to an abuse of discretion standard of review in tax refund suits involving § 446 issues, but rather the court has *de novo* review in such suits. Plaintiffs agree in substance with the defendant that the ultimate issue before the court is—whether the Commissioner abused his discretion when concluding that Quincy's income was not "clearly reflected" because it employed the Rule of 78's when calculating its interest expense deduction. However, they contend that, based on the court's *de novo* standard of review, they are, nevertheless, entitled to put forth additional facts beyond those in

the record (*i.e.,* the RAR) to establish that Quincy's method of accounting was "clearly reflective of income" and that the Commissioner abused his discretion in changing that method to the economic accrual method.

Secondly, the plaintiffs aver that the Commissioner failed to look at the individual peculiar facts of the Quincy partnership in determining that its use of the Rule of 78's method was not "clearly reflective of income." Instead, argue plaintiffs, the Commissioner ruled only that, on the authority of Rev.Rul. 83–84, the Rule of 78's method, *ipso facto,* was not "clearly reflective of income." The plaintiffs further aver that the Commissioner failed to look at the economic reality regarding the time in which the loan was made, *i.e.,* market interest rates were then somewhere between 18–23% in 1980. Moreover, plaintiffs contend that at no time did Quincy's accruals exceed the economic reality of the market place. In fact, the plaintiffs contend that the reason that there was no stated fixed interest rate on the wraparound mortgage note was that the parties wished to utilize a variable rate to compensate for the high interest rates at that time and the numerous risks involved with the transaction, *i.e.,* the fact that 96% of the value of the property was mortgaged under the note. In other words, plaintiffs aver that the parties to the transaction established a schedule of payments approximating interest rates of 18%, 17%, 16%, and 15%, respectively, for the taxable years of 1981 through 1984, and applied such payments for those years first to interest and then to principal.

Lastly, the plaintiffs contend that, contrary to the defendant's contentions,[13] the Florida land sale transaction was the result of arms-length negotiations, and the fact that the parties were related does not preclude such a fact circumstance. Furthermore, plaintiffs contend that this mortgage note must be tested under arms-length market rates regarding the ultimate issue

---

**13.** The Tax Court in *Prabel* also indicated that the transaction was "not the result of arms-

length negotiations." 91 T.C. at 1103.

whether income was clearly reflected by use of the Rule of 78's method of accounting. Accordingly, plaintiffs aver that the Commissioner's use of the 11.77% interest rate over the 23–year term of the note was not a proper interest rate under the constant rate method in that it did not reflect market reality, *i.e.*, the fact that it would have been impossible to obtain a loan at 11.77% in 1980.

## II. Count III

### A. *Defendant*

As to Count III, the defendant now contends that, notwithstanding this court's previous ruling to the contrary, there are no genuine issues of material fact with respect to the issues set forth in said count because plaintiffs failed to comply with the requirements of Rev.Proc. 84–28, and also because the Commissioner initiated the change in accounting method, not Quincy. More specifically, defendant avers that, pursuant to the mandatory procedures set forth in Rev.Proc. 84–28, Quincy was *required* to file Form 3115 with a timely filed federal income tax return for the taxpayers' first taxable year ending on or after December 31, 1983, or with an amended return filed within the extended time period provided by § 6081 of the Internal Revenue Code. Defendant also contends that at the very latest, plaintiffs should have filed said form by June 14, 1984. More importantly, and as previously emphasized, defendant contends that the question of "whether an issue [as to the deductibility of plaintiffs' interest expense] was raised and pending, within the meaning of the Revenue Procedure, *need not be reached.*" DMSJ p. 29 (emphasis added).

### B. *Plaintiffs*

Plaintiffs, on the other hand, embrace the court's prior opinion in this matter, *supra.* They contend that there are genuine issues of material fact with respect to Count III because the issue of *"when* the revenue agent raised the issue of the propriety of the amount of the interest deductions claimed" is *clearly* in dispute. *See*

*Mulholland,* 16 Cl.Ct. at 266. Moreover, the plaintiffs further contend that "the examining agent's report erroneously indicated that an issue regarding the Rule of 78's interest deductions was raised and pending prior to April 2, 1984, thereby *precluding* the use of the Revenue Procedure." Ps' Opp. pp. 13–14 (emphasis added). Thus, solely "as a result of the examining agent's report, Quincy could not *effectively* file an application to change its method of accounting to take advantage of Revenue Procedure 84–28." *Id.* (emphasis added).

### *Issues*

Given the foregoing, the broad threshold issues currently before the court with regard to Count I are: Whether the Commissioner properly exercised his authority, pursuant to § 446(b)—(i) in determining that Quincy's use of the Rule of 78's method to calculate its interest expense deduction did not "clearly reflect income," and (ii) in requiring Quincy to change its method of accounting to the economic accrual method, which in the Commissioner's opinion did "clearly reflect income." Within these two broad issues are two narrow issues: (i) Does the Rule of 78's method of accounting used in determining plaintiffs' interest deduction "clearly reflect income" pursuant to § 446(b) in the case of Quincy Associates? and (ii) in the event that the taxpayers' accounting method does not clearly reflect income, does the method chosen by the Commissioner "clearly reflect income?" Lastly, Count III poses the question—whether an issue regarding the use of the Rule of 78's method of accounting had been "raised" with the taxpayers *and* was "pending" before the Service on or before April 2, 1984.

### *Discussion*

## I. Standard of Review

■ Given the defendant's strenuous contentions that the Claims Court is limited to an abuse of discretion standard of review with respect to refund suits under § 446 of the Internal Revenue Code, we

now address said contention in full.[14] At the outset, we observe the controlling law of our predecessor court, the Court of Claims, in *Warren Corporation v. United States,* 141 F.Supp. 935, 135 Ct.Cl. 305 (1956). In the *Warren* case, the court unequivocally held that "the tax laws contemplate a trial *de novo,* [especially where] there is nothing in the ... provision that indicates to the contrary."[15] In addition, the court held that, once in court, the taxpayer is not limited to showing only that which he furnished to the Commissioner. The taxpayer is entitled to prove the substantive merits of his case-in-chief, *ab initio.*

Notwithstanding the foregoing, defendant argues that, with respect to § 446, the court is limited to an abuse of discretion standard, and cites in support of its position *Thor Power Tool Co. v. Commissioner of Internal Revenue,* 439 U.S. 522, 99 S.Ct. 773, 58 L.Ed.2d 785 (1978).[16] Specifically, defendant cites to the following language in *Thor:*

> It is obvious that on their face, §§ 446 and 471, with their accompanying Regulations, vest the Commissioner with wide discretion in determining whether a particular method of inventory accounting should be disallowed as not clearly reflective of income. This Court's cases confirm the breadth of this discretion. In construing § 446 and its predecessors, the Court has held that "[t]he Commissioner has broad powers in determining whether accounting methods used by a taxpayer clearly reflect income." *Commissioner v. Hansen,* 360 U.S. 446, 467, 79 S.Ct. 1270, 1282, 3 L.Ed.2d 1360 (1959). Since the Commissioner has "[m]uch latitude for discretion," his interpretation of the statute's clear reflection of income standard "should not be interfered with unless clearly unlawful." *Lucas v. American Code Co.,* 280 U.S. 445, 449, 50 S.Ct. 202, 203, 74 L.Ed. 538 (1930). To the same effect are *United States v. Catto,* 384 U.S. 102, 114, 86 S.Ct. 1311, 1317, 16 L.Ed.2d 398 (1966); *Schlude v. Commissioner,* 372 U.S. 128, 133–34, 83 S.Ct. 601, 604–05, 9 L.Ed.2d 633 (1963); *American Automobile Assn. v. United States,* 367 U.S. 687, 697–98, 81 S.Ct. 1727, 1732–33, 6 L.Ed.2d 1109 (1961); *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 189–190, 77 S.Ct. 707, 712–713, 1 L.Ed.2d 746 (1957); *Brown v. Helvering,* 291 U.S. 193, 203, 54 S.Ct. 356, 360, 78 L.Ed. 725 (1934). In construing § 203 of the Revenue Act of 1918, 40 Stat. 1060, a predecessor of § 471, the Court held that the taxpayer bears a *"heavy burden of [proof],"* and that the Commissioner's disallowance of an inventory accounting method is not to be set aside unless shown to be "plainly arbitrary." *Lucas v. Structural Steel Co.,* 281 U.S. 264, 271, 50 S.Ct. 263, 266, 74 L.Ed. 848 (1930).

*Thor,* 439 U.S. at 532, 99 S.Ct. at 781 (emphasis added). Based on the foregoing language, the defendant strongly contends that the Supreme Court intended that all tax refund suits in this court involving the Commissioner's discretion pursuant to § 446(b) be reviewed only for an abuse of discretion. Consequently, and according to defendant's analysis, this court is, therefore, limited to the *record,* that is, we may only review those limited facts upon which the Commissioner relied in determining that plaintiffs' method of accounting does not clearly reflect income, and accordingly,

---

**14.** To facilitate our understanding of the defendant's contentions with respect to this matter, the court ordered the parties on December 17, 1991, to brief the issue of—"What is the standard of review in tax refund cases in the Claims Court, where the Commissioner has utilized his discretion, pursuant to I.R.C. § 446(b), and determined that income is not 'clearly reflected' by the method of accounting utilized by the taxpayers?" Said briefs were filed by the parties on January 13th and January 28th, 1992.

**15.** In *Warren,* the taxpayer took a deduction for a wholly or partially worthless bad debt. The IRS, in turn, disallowed said deduction because the ownership of the corporation owing the debt and the ownership of the plaintiff corporation were one and the same.

**16.** Defendant points out in its brief, and we agree, that the legislative history of § 446(b) is not helpful with respect to the standard of review to be used by this court in reviewing the acts of the Commissioner.

the taxpayers may *not* adduce any additional evidence in furtherance of the factual issue(s) in their case. We thoroughly disagree with defendant's interpretation of the Supreme Court's holding.

First, looking to the procedural posture of *Thor* itself, the case began in the Tax Court, not in the Claims Court, and even more important is the fact that the case went to trial therein on the merits. *Thor Power Tool Co. v. Commissioner of Internal Revenue*, 64 T.C. 154, 165 (1975). There the taxpayer was given a full opportunity to present its case at trial, and the court did not rely solely on the record established by the Commissioner. *Id.*

More importantly, a case originating in the predecessor Court of Claims which involved the Commissioner's exercise of discretion pursuant to § 41, the predecessor to § 446(b), also went to trial on the merits. *See American Automobile Assn. v. United States*, 181 F.Supp. 255, 149 Ct.Cl. 324 (1960). Therein, and following a trial *ab initio*, the court held that the Commissioner did not abuse his discretion in requiring the taxpayer to change his method of accounting, because the taxpayer's method of accounting was not authorized by existing federal tax law. *Id.* 181 F.Supp. 255, 149 Ct.Cl. at 330. Upon appeal to the Supreme Court, that Court referred to the findings of the Hearing Commissioner, as well as to the Court of Claims' determinations based on those findings. Nowhere therein, nor in the *Thor* case, did the Supreme Court indicate that either the Tax Court or the Court of Claims improperly conducted a trial *de novo* to determine whether the Commissioner had, in fact, abused his discretion in determining whether the accounting method used clearly reflected income. Instead, the Court relied on the findings of fact of

both courts in making its own determination. *See Thor*, 439 U.S. at 533, 99 S.Ct. at 781; *American Automobile*, 367 U.S. at 690–98, 81 S.Ct. at 1728–32.

Given the foregoing obligatory case law, we are constrained to conclude that the correct response to the question—"What is the standard of review in tax refund cases in the Claims Court, where the Commissioner has utilized his discretion, pursuant to I.R.C. § 446(b), and determined that income is not 'clearly reflected' by the method of accounting utilized by the taxpayers?"—is *de novo* review.[17] Therefore, when looking at the operative issues raised by defendant's motion for summary judgment, we are not limited to *only* those facts which were administratively before the Commissioner. But rather, if we determine that there are genuine issues of material fact, this court, in accordance with well-established principles of law, may proceed to a trial on the merits, *ab initio*, to determine whether the Commissioner has in fact abused his discretion pursuant to § 446(b) in finding that, based on the accounting method used, income was not clearly reflected.

## II. Motion for Summary Judgment

■ It is hornbook law that, pursuant to RUSCC 56(c), a judgment on a motion for summary judgement is generally mandated—"if ... there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In such circumstance, judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's

17. In *Merck & Co. v. United States*, 24 Cl.Ct. 73, 79–80 (1991), the Claims Court held that "[i]n a tax refund suit involving Section 482 reallocation, the proceeding is *de novo, not a quasi appellate review of an administrative determination.*" The *Merck* court also stated that "Section 482 empowers the IRS to reallocate income, ... [based] on a determination that such allocation is necessary in order to prevent evasion of taxes or clearly to reflect income." Obviously, this determination is squarely analogous to the Commissioner's authority under § 446(b).

In addition, we note that Shirley D. Peterson, the former Assistant Attorney General, Tax Division, Department of Justice, recently conceded in a Joint Status Report filed before this court on December 31, 1991, in the case of *British Car Auctions, Inc. v. United States*, No. 91–157T, that "this case, as with all tax refund suits, is a *de novo* proceeding *in which the administrative proceedings prior to the filing of the complaint are not relevant to the determination of whether the plaintiff overpaid his taxes.*" (emphasis added).

case, and on which that party will bear the burden of proof at trial." *Id.* Initially, however, the movant has the onerous burden of showing that there are no issues of material fact and that it is entitled to judgment as a matter of law. *Id.* at 323, 106 S.Ct. at 2552. The non-movant, on the other hand, must respond by producing affirmative evidence that a genuine issue of material fact does exist, and such an issue is determined to be *"genuine* only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant." *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1562 (Fed.Cir.1987). *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Once both parties have sufficiently set forth their respective positions, the court will then inquire—whether reasonable jurors could find, on the indisputable facts by a preponderance of the evidence, that the movant has met his burden and is entitled to a judgment as a matter of law. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512. If so, the court may grant the motion for summary judgment.

Given these well-established guideposts, and after a careful review of all of the parties' submissions, we are compelled to conclude, given the existence of disputable material facts here, that this case is not ripe for decision in that said motion for summary judgment was improvidently filed. This is clearly true since the threshold question "whether a given method of accounting clearly reflects income is admittedly a question of material fact." *Thor Power Tool Co. v. Commissioner of Inter-*

*nal Revenue,* 563 F.2d 861, 866 (7th Cir. 1977);[18] *Artnell Co. v. Commissioner of Internal Revenue,* 400 F.2d 981, 983–85 (7th Cir.1968). In addition, whether the Commissioner exceeded or abused his discretionary authority is, at the very least, a mixed question of fact and law. *Merck,* 24 Cl.Ct. at 79.[19] More importantly, under the principle of *stare decisis,* we have previously ruled herein interlocutorily that there are genuine issues of material fact as to *both* Count I and Count III. However, defendant appears to have totally ignored this obvious fact. Accordingly, we shall address each count seriatim.

### A. *Count I*

First, we refer to this court's prior opinion in *Mulholland.* Therein, the court specifically noted that the parties stipulated that "Count I is not currently before the court because of genuine issues of material fact." *Mulholland,* 16 Cl.Ct. at 254 n. 6. Moreover, based on the foregoing and the fact that *both* parties failed to include Count I in their cross-motions for summary judgment, the court further "deem[ed] the parties' failure to include such count [*i.e.,* the primary count before the court], for summary judgment to be a tacit admission that said count raises genuine issues of material fact. Thus, issues contemplated by Count I are preserved for a trial on the merits." Therefore, given the law of the case, and because, to date, we have not in any way modified said opinion, nor has either party sought a reconsideration of the court's ruling, we hold that there are genuine issues of material fact as to Count I.

---

**18.** Defendant cites to identical language in its motion for summary judgment. Defendant indicates nevertheless that the "determination of that fact ... is committed to the discretion of the Commissioner [only]."

**19.** The court is mindful of the fact that in *Prabel* the Tax Court ruled summarily on the same issues and facts as those contained herein. Nevertheless, and with all due deference to the Tax Court's summary disposition of an identical issue as in Count I herein, we are of the opinion that certain critical factual issue(s) are ripe for decision in a trial *de novo* in view of the broad question—whether the Commissioner abused

his discretion in determining that Quincy's method of accounting does not clearly reflect the taxpayers' reported income.

It further appears that the sole basis for the decision in *Prabel* was the mechanical application of Rev.Rul. 83–84. In view of such, we respectfully disagree with the analysis therein, in light of the fact that a revenue ruling is only an IRS pronouncement of its official interpretation of tax law; it does not have the force and effect of law and Treasury regulations. *McMullan v. United States,* 686 F.2d 915, 231 Ct.Cl. 378, 385 n. 16 (1982). *See United States v. Hall,* 398 F.2d 383 (8th Cir.1968).

■ Even assuming arguendo that we had not made such a prior ruling, it is clear to the court that defendant is still not entitled to a summary disposition on the merits. First, we turn specifically to the language of § 446(b), which states, in pertinent part, as follows:

*If* no method of accounting has been regularly used by the taxpayer, or *if the method used does not clearly reflect income,* the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

I.R.C. § 446(b) (emphasis added). Based on said language, our initial question is then whether Quincy's method of computing interest deductions, *i.e.,* the Rule of 78's method, is clearly reflective of the taxpayers' income. If so, then according to § 446(b), the Commissioner has no discretion to change the taxpayers' method of accounting.[20] However, if said method is administratively determined not to be clearly reflective of income, which we hold to be a factual question,[21] then the Commissioner may exercise his discretion and change the taxpayer's method, *but* only to a method that, in his opinion, does clearly reflect income. Therefore, the next question becomes whether the Commissioner abused his discretion in requiring Quincy to change to the economic accrual method of accounting.

Consequently, since it is quite · obvious that both questions involve a genuine issue of material fact, we have no choice but to deny defendant's motion for summary judgment. *See Thor,* 563 F.2d at 866; *Merck,* 24 Cl.Ct. at 79; *Madison,* 72 T.C. at 555; *Applied Communications v. Commissioner,* Tax.Ct.Mem.Dec. 1989–469, 1989 (P–H) para. 89,469 (1989). Moreover, even the defendant indicates in its brief that the "[c]lear reflection of interest depends upon whether interest is allocated in a *reasonable manner* over the life of the loan because the timing of interest expense deductions is subject to the clear reflection requirement of Section 446." DMSJ p. 20 (emphasis added). Obviously, the question of whether income is clearly reflected over the life of the loan in a "reasonable manner" is an issue of material fact which may be better addressed at trial rather than in a trial by affidavits.

The *McMullan* case gives defendant no comfort. In that case, the issue was whether the taxpayers' deduction of prepaid interest improperly distorted their income. The record shows that the plaintiffs therein totally failed to contest the relevant facts before the court, nor did they challenge the results of the revenue ruling implicated in the action. *McMullan,* 686 F.2d 915, 231 Ct.Cl. at 385–86. Thus, the Court of Claims was, on those peculiar facts, properly able to decide the issue therein, *i.e.,* whether the taxpayers' income was clearly reflected, on the parties' cross-motions for summary judgment. *Id.* 686 F.2d 915, 231 Ct.Cl. at 389, 392. On the other hand, based on the record in the instant case, the facts herein are markedly distinguishable. First, the plaintiffs at bar did not file a cross-motion for summary judgment; instead, the plaintiffs are strenuously contesting numerous issues of fact, *i.e.,* whether the transaction was conducted at arms-length, whether the Commissioner considered the current market rate of interest in making his determination that the plaintiffs' income was not clearly reflective of income, just to name a few. Moreover, our predecessor court in *Duffy v. United States,* 690 F.2d 889, 231 Ct.Cl. 679, 696 (1982), stated that "the presence or absence" of a tax motive is also a factor to be considered in determining whether there was a material distortion of income. Clearly, the intent of the taxpayer is a question

---

**20.** In its brief, defendant candidly recognized that "[t]he Commissioner may not require a taxpayer to change from a method of accounting that clearly reflects income to another method preferred by the Commissioner. *Prabel,* 91 T.C. at 1112."

**21.** Defendant, as noted, acknowledges that— whether income is clearly reflected by a taxpayer's method of accounting is a question of fact, *citing to Madison Gas & Electric Co. v. Commissioner,* 72 T.C. 521, 525 (1979), *aff'd* 633 F.2d 512 (7th Cir.1980).

of material fact when in dispute.[22] Thus, given all of the forgoing circumstances, we hold that there are genuine issues of material fact as to Count I, and therefore must deny defendant's motion with respect to said count.

### B. *Count III*

Initially, in defendant's partial motion for summary judgment on Count III, it vehemently argued that, as a matter of law, it was entitled to relief, and the plaintiffs, therefore, were not entitled to utilize the benefits of Rev.Proc. 84–28, *because* the issue with respect to the propriety of Quincy's interest deductions had been *raised and was pending* on or before April 2, 1984. In ruling on said motion, this court in its opinion on January 30, 1989, *fully* addressed all of the contentions of the parties with respect to Count III. And upon a careful analysis of all of the facts, we determined therein that there were genuine issues of material fact present with respect to the question *"when* the revenue agent raised the issue of the propriety of the amount of the interest deductions claimed." For a detailed analysis with regard to Count III, *see Mulholland,* 16 Cl. Ct. at 265–67. Then, after receiving an adverse ruling on the ripeness of its partial motion for summary judgment with respect to said argument, defendant filed a *second* motion for summary judgment indicating that, despite the court's previous finding that there are genuine issues of material fact as to Count III, those issues are now irrelevant. Now defendant has a *new* argument by which it contends that there are no genuine issues of material fact. In short, defendant argues that, because Quincy failed to file Form 3115 within the specified time period required by Rev.Proc.

84–28, Quincy is not entitled to the benefits of said Procedure.

We are, of course, *very* concerned as to why the defendant failed to develop all dispositive issues upon the filing of its *initial* motion for summary judgment. Clearly, the fact issue—whether Quincy had filed Form 3115 in 1984—was known to the defendant at the time it filed its initial partial motion for summary judgment on January 23, 1987. Thus, we see no plausible reason why the defendant could not have in fact raised all of the fragmentary issues in its initial pleadings. It is apparent to the court that, given the fragmentary nature of defendant's "partial" motions for summary judgment, it has, in essence, received "two bites at the apple." What is most troubling, against this background, is the fact that the second motion was filed without leave of court. Obviously, such actions on the part of the defendant are not consonant with the spirit of the summary judgment rules, nor do they further the interests of judicial economy. *Celotex,* 477 U.S. at 327, 106 S.Ct. at 2554.

In *Celotex,* the Supreme Court's reasoning in liberalizing the filings of motions for summary judgment was based on the idea that a motion for summary judgment is designed "to secure the just, speedy and inexpensive determination of every action."[23] More importantly, however, is the doctrine of the law of the case. Under this doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in successive stages of the same litigation. 1B Moore's Federal Practice ¶ 0.404[1] (2d ed.). At the trial level, the doctrine is "a management practice to permit logical progression toward judgment." *Id.* Accordingly, the defendant's patent disregard for said doctrine has caused the court to expend a dispropor-

---

**22.** The plaintiffs indicate that the initial transaction was arms-length, and that from intense negotiations with the lender, the taxpayer determined an interest rate that was in accordance with the market rate at that time. Consequently, they fully intended that their interest deductions would be in accordance with the federal tax laws.

**23.** Moreover, the Court of Appeals for the Eleventh Circuit in *Friends for All Children Inc. v. Lockheed Aircraft Corp.,* 746 F.2d 816, 827 n. 17 (11th Cir.1984), cited to *Powell v. Radkins,* 506 F.2d 763 (5th Cir.1975), *cert. denied,* 423 U.S. 873, 96 S.Ct. 140, 46 L.Ed.2d 104 (1975), in support of the proposition that partial motions for summary judgment are meant to *aid the efficiency of adjudication,* and are not a matter of right.

tionate amount of time resolving improvidently filed motions in this case.

In any event, even assuming arguendo that the defendant had raised the issue with respect to whether Quincy is entitled to utilize the benefits of Rev.Proc. 84–28 because it allegedly failed to file Form 3115, the court would have nevertheless found that there are genuine issues of material fact contained in defendant's argument. This is true, in light of plaintiffs' contentions that "[a]s a result of the examining agent's report, Quincy could not [have] effectively file[d] an application to change its method of accounting," *i.e.*, a Form 3115, because plaintiffs allege that the report *erroneously* indicated therein that the issue regarding the Rule of 78's deductions was raised and pending *prior* to April 2, 1984, thus *precluding* Quincy from attempting to use Rev.Proc. 84–28.[24] Ps' Opp. pp. 13–14 (emphasis added). Therefore, given all of the foregoing and the court's previous determination that there are genuine issues of material fact present as to *when* the revenue agent raised the issue of the propriety of the interest deductions claimed, it is apparent that there are genuine issues of material fact as to Count III. Inasmuch as we have previously concluded that there are genuine issues of material fact as to Count III, and because we find that genuine issues of material fact are present as to defendant's *new* contentions before the court, we deny defendant's motion for summary judgment on Count III.

*Conclusion*

Given the foregoing, we are compelled to DENY defendant's motion for summary judgment on *both* Count I and Count III in view of genuine issues of material fact. Therefore, the following pretrial schedule, pursuant to RUSCC Appendix G, shall now become operative:

1. All discovery shall be completed by May 31, 1992;

2. The parties shall comply with paragraph 10 of Section V of Appendix G by July 24, 1992;

3. Plaintiff shall comply with paragraphs 11–13 of Section V of Appendix G on or before August 10, 1992;

4. Defendant shall comply with paragraphs 11–13 of Section V of Appendix G on or before September 1, 1992;

5. The parties are not required to file proposed findings of fact (paragraphs 11(a) and 11(b));

6. The parties shall comply with paragraphs 14–15 of Section V of Appendix G on or before September 1, 1992.

As to paragraph 14 (Stipulations), the joint memorandum shall be in two parts:

i. The first part shall contain separately numbered paragraphs covering all matters to which the parties have stipulated during the course of the proceedings. The stipulations must be comprehensive and the fact that any matter may have been established during discovery by admission or otherwise is not grounds for omitting it from stipulation. A party may not refuse to stipulate as to the content or purport of a document simply by claiming that the document is the best evidence of its content. Nor is the fact that a party deems a fact irrelevant a sufficient basis for refusing to stipulate to its existence. Relevance may be argued in the Memorandum of Contentions of Fact and Law.

ii. The second part of the memorandum shall set forth any matters a party proposes to be stipulated, as to which the parties have failed to reach agreement, and which the proponent of the stipulation believes are not reasonably subject to dispute. Each such proposed stipulation shall be set forth in full, together with the reasons the proponent believes the matter is not subject to dispute. The opposing party must explain beneath why and to what extent it believes the matter to be in dispute.

7. If contemplated, the parties shall comply with paragraph 16 of Section V of Appendix G on or before September 1, 1992;

8. The pretrial conference shall be held at 10:00 a.m. on September 22, 1992, at the

---

**24.** *See supra* note 8.

National Courts Building, 717 Madison Place, N.W., Washington, D.C. 20005. The exact courtroom location will be posted in the lobby at that time.

9. The trial of this case is hereby set for October 6, 1992, at 9:30 a.m., in either Philadelphia, Pennsylvania, or Washington, D.C. The parties will be advised of the exact location at a later date.

IT IS SO ORDERED.