T.C. Memo. 2000-353


UNITED STATES TAX COURT


EDWARD G. SMITH AND JAN M. SMITH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10833-99.                    Filed November 14, 2000.


<u>Larry D. Vince</u>, for petitioners.

<u>Timothy F. Salel</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WELLS, <u>Chief Judge</u>:  Respondent determined a deficiency of
$46,283 in petitioners' Federal income tax for 1995.  Unless
otherwise indicated, section references are to sections of the
Internal Revenue Code, as amended, and Rule references are to the
Tax Court Rules of Practice and Procedure.  The deficiency is
attributable to an adjustment to the taxable income reported by

EJKC, Inc. (EJKC), an S corporation of which petitioner Edward G. Smith is the sole shareholder, based on respondent's determination that EJKC is required to account for inventories and use the accrual method of accounting.[1]  After a concession by petitioners, the issues for decision are:  (1) Whether EJKC's contracts to purchase and install flooring materials constitute sales of "merchandise"; and (2) whether respondent abused his discretion in determining that EJKC's use of the cash method of accounting does not clearly reflect its income.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.  At the time the petition was filed, petitioners resided in Moreno Valley, California.

Petitioner has 25 years' experience installing flooring materials such as carpeting, vinyl and ceramic tile, and hardwood flooring (flooring materials).  In 1988, petitioner started his own flooring installation business.  In 1990, petitioner decided to operate the business as an S corporation and filed articles of incorporation for EJKC with the California secretary of state. EJKC conducts business under the fictitious business name of Smith Floors & Installations (Smith Floors).

---

[1]  References to petitioner in the singular are to petitioner Edward G. Smith.

Initially, Smith Floors' operations were modest and limited to flooring installation services. Smith Floors would dispatch its employees to a job site to install flooring materials that had been ordered by and delivered to the general contractor. Running its business in this fashion exposed Smith Floors to operational disruptions arising from errors by contractors in ordering flooring materials and scheduling installations. To avoid these disruptions, and to increase Smith Floors' range of services, petitioner decided to expand Smith Floors' operations by obtaining warehouse space which would allow Smith Floors to acquire and hold the flooring materials that it would install pursuant to its flooring installation contracts.

Smith Floors operates its business out of an 8,500 square foot commercial building in Riverside, California. Smith Floors uses 6,000 square feet of space as warehouse area and 2,500 square feet of space as showroom and office areas.

Smith Floors receives invitations to bid on jobs from architects, contractors, and developers. Prior to submitting a bid, Smith Floors receives floor plans for the job and specifications identifying the flooring materials to be installed. Although petitioner makes product recommendations, Smith Floors generally has no discretion as to manufacturer, type, grade, or color of the flooring materials that it installs.

After being awarded a contract to install flooring materials for a particular job, Smith Floors' practice is to take delivery at its warehouse of the flooring materials specified under the contract, inspect the flooring materials to ensure that they conform in both quality and quantity with the specifications for the particular job, inspect the job site to verify that installation may proceed, and deliver the flooring materials to the job site a few days in advance of the installation date to allow the materials to "acclimate" to the environment.

Smith Floors typically bills its customers a "service charge" ranging from 10 to 20 percent of the cost of the flooring materials to be installed. The service charges cover Smith Floors' cost of receiving, storing, inspecting, and delivering the flooring materials to the job sites. Smith Floors bills its customers for the flooring materials as soon as possible to avoid expenses associated with financing the purchase of the flooring materials. However, Smith Floors sometimes does not receive reimbursement for the cost of the flooring materials for several months. Smith Floors does not charge interest when reimbursement for the cost of the flooring materials is delayed.

After a job is completed, Smith Floors retains (for approximately 1 year) scrap or excess flooring materials to ensure continuity in the dye lot for a particular job in the

event that a warranty claim or repair work request is made.[2] Scrap or excess flooring materials remaining after 1 year are either returned to the client or thrown out.

Smith Floors uses its warehouse area to store padding and flooring installation materials including glue/adhesives, nails, cap metal, and cove stick. Smith Floors purchases padding and glue/adhesives in monthly allotments (based on work projected for the month). Smith Floors does not charge separately for flooring installation materials but includes such expenses in its labor charges.

Smith Floors does not store any flooring materials in its warehouse for resale to the general public.

Smith Floors uses its showroom area to display samples of flooring materials. Smith Floors encourages architects, designers, and contractors to visit its showroom to view its samples of flooring materials for particular projects.

Smith Floors (through petitioner) has developed an expertise regarding the proper installation of flooring material for particular applications. For example, petitioner has expertise regarding the proper installation of flooring material in hospital operating rooms which require antibacterial surfaces, and in schools and kitchens which require slip-resistant surfaces. Petitioner is also known for his skill and

---

[2] Smith Floors warrants its work for 1 year.

craftsmanship in hand-cutting and incorporating custom designs, such a corporate logos, into flooring jobs. Smith Floors enrolls its employees in annual training programs where the employees are instructed (and certified) in the installation of various flooring materials.

During 1995, Smith Floors had a total of 836 jobs: 555 jobs required Smith Floors to purchase and install flooring materials and 281 jobs required Smith Floors to provide installation-only services. Smith Floors' has provided flooring installation services for a number of large companies including Albertson's (grocery stores), Marriott (hotels), Walgreens (drug stores), Pacific Theaters, and Walt Disney Corporation, as well as the U.S. General Services Administration. Smith Floors frequently installs either proprietary or custom-designed flooring materials. Normally, the companies contracting with Smith Floors negotiate the price of such flooring materials in advance directly with the manufacturer of the flooring materials.

Smith Floors has consistently used the cash method of accounting to prepare its corporate income tax returns. Smith Floors routinely assigns a value of $15,000 to its inventory from year to year to account solely for flooring installation materials on hand such as glue/adhesives, nails, cap metal, and cove stick. Smith Floors does not consider flooring materials and padding on hand at the end of the year to be inventory

because they were purchased and designated for installation for a specific job.

For the taxable year 1995, Smith Floors reported gross receipts of $1,693,669 and cost of goods sold of $1,252,445. Smith Floors computed its cost of goods sold as follows:

| | | |
|---|---|---:|
| Beginning inventory | | $15,000 |
| Purchases | | 686,283 |
| Cost of labor | | 386,135 |
| Other | | |
| Back charges | $1,632 | |
| Contract labor | 21,402 | |
| Freight | 1,060 | |
| Payroll taxes direct labor | 37,941 | |
| Small equipment | 719 | |
| Supplies | 98,405 | |
| Worker's compensation | 18,868 | |
| Total other | | 180,027 |
| | | |
| Total | | 1,267,445 |
| Ending inventory | | (15,000) |
| Cost of goods sold | | $1,252,445 |

OPINION

Section 446(b) provides that, if a taxpayer's method of accounting does not clearly reflect income, the taxpayer's computation of income "shall be made under such method as, in the opinion of the Secretary, does clearly reflect income."  In connection with the foregoing, section 471(a) provides the general rule that a taxpayer is required to take inventories on such basis as the Secretary may prescribe in order to clearly determine the taxpayer's income.  Thus, the Commissioner is granted broad discretion to determine whether a taxpayer's use of

a method of accounting clearly reflects income and, if not, to direct the taxpayer to adopt an alternative method of accounting. See sec. 446(b); United States v. Catto, 384 U.S. 102, 114 & n.22 (1966); Commissioner v. Hansen, 360 U.S. 446, 468 & n.12 (1959).

Section 446 imposes a heavy burden on a taxpayer disputing the Commissioner's determination on accounting matters. See Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979). We review the Commissioner's exercise of authority under section 446(b) for abuse of discretion. See Ford Motor Co. v. Commissioner, 102 T.C. 87, 91 (1994), affd. 71 F.3d 209 (6th Cir. 1995). The Commissioner's determination is entitled to more than the usual presumption of correctness. See id. and cases cited therein. Whether an abuse of discretion has occurred depends upon whether the Commissioner's determination is without sound basis in fact or law. See Ansley-Sheppard-Burgess Co. v. Commissioner, 104 T.C. 367, 371 (1995). To prevail, a taxpayer must establish that the Commissioner's determination was "clearly unlawful" or "plainly arbitrary". Id. at 370.

Section 1.471-1, Income Tax Regs., 25 Fed. Reg. 11724 (Nov. 26, 1960), provides that a taxpayer must use inventories "in every case in which the production, purchase, or sale of merchandise is an income-producing factor." Section 1.446-1(c)(2)(i), Income Tax Regs., provides that a taxpayer using inventories generally must use the accrual method of accounting.

Relying on the foregoing regulations, respondent determined that the flooring materials that Smith Floors purchased and installed during 1995 were merchandise, that such merchandise was an income-producing factor, and that Smith Floors therefore must use the accrual method of accounting to clearly reflect its income.

Petitioners contend that Smith Floors is a service provider and that it purchases flooring materials solely as an accommodation to those contracting for its services. Therefore, petitioners contend that Smith Floors' use of the cash method of accounting is proper.

Whether Smith Floors must use the accrual method of accounting instead of the cash method depends on whether Smith Floors is in the business of selling merchandise (within the meaning of sec. 1.471-1, Income Tax Regs.) to customers in addition to providing flooring installation services or whether the flooring material provided by Smith Floors is a supply that is incidental to Smith Floors installation services.

The term "merchandise" is not defined in either the Internal Revenue Code or the regulations. See RACMP Enters., Inc. v. Commissioner, 114 T.C. 211, 221 (2000). To resolve whether particular materials constitute merchandise, we look to the context in which the materials are used. See id. The high cost of materials relative to labor costs is insufficient, standing alone, to transform the sale of a service to the sale of

merchandise and a service.  See Osteopathic Med. Oncology &
Hematology, P.C. v. Commissioner, 113 T.C. 376, 386 (1999).  We
distinguish between materials held for sale and materials that
are consumed by the taxpayer in performing a service.  See RACMP
Enters., Inc. v. Commissioner, supra at 224.

In RACMP Enters., Inc. v. Commissioner, supra, we were
presented with the question whether the raw materials (concrete
mix, sand, and drain rock) that a concrete contractor used in
completing contracts for the construction of foundations,
driveways, and walkways constituted merchandise within the
meaning of section 1.471-1, Income Tax Regs.  Relying on
Osteopathic Med. Oncology & Hematology, P.C., v. Commissioner,
supra, we concluded that construction materials generally will
not be considered merchandise within the meaning of the
regulation if the inherent nature of the taxpayer's business is
that of a service provider and the materials are an indispensable
and inseparable part of the rendering of the services.  See RACMP
Enters., Inc. v. Commissioner, supra at 222.

In RACMP Enters., Inc. v. Commissioner, supra, we initially
concluded that the taxpayer/concrete contractor was a service
provider.  See id.  In reaching that conclusion, we noted that
construction contracts involve primarily the furnishing of labor
and contractual skills, and in the context of that case, the

taxpayer did not hold concrete materials for sale but rather consumed the materials in performing a service. See id.

We further concluded: (1) The ephemeral quality of liquid concrete precluded such material from being considered merchandise; and (2) the remaining materials used by the taxpayer, including sand, drain rock, and hardware, were incorporated into the particular project to such a degree that they lost their separate identity, and likewise should not be considered merchandise within the meaning of the regulation. Id. at 225-229.

Consistent with our analysis in RACMP Enters., Inc. v. Commissioner, supra, we hold that the flooring materials that Smith Floors purchases and installs in fulfilling its contracts do not constitute merchandise within the meaning of section 1.471-1, Income Tax Regs. Like the concrete contractor in RACMP Enters., Inc. v. Commissioner, Smith Floors is inherently a service provider. Smith Floors' stock in trade is its expertise in installing flooring materials in a variety of unique applications and petitioner's skill and craftsmanship in hand-cutting and incorporating specialized designs into flooring materials. The companies contracting with Smith Floors are primarily interested in the firm's labor and contractual skills.

Smith Floors purchases and takes delivery of the flooring materials required for a particular job to better manage the

project and to provide additional services to the companies contracting for the installation of the flooring materials.  In particular, Smith Floors takes delivery of flooring materials at its warehouse, inspects the materials to ensure that they conform in both quality and quantity with the specifications for the particular job, inspects the job site to verify that installation may proceed, and delivers the flooring materials to the job site in advance of the installation date to allow the materials to "acclimate" to the environment.  Smith Floors charges its customers for those services as a percentage markup on the cost of the flooring materials.

Smith Floors frequently installs either proprietary or custom-designed flooring materials.  Normally, the companies contracting with Smith Floors negotiate the price of such flooring materials in advance directly with the manufacturer of the flooring materials.  Smith Floors is neither a manufacturer of merchandise nor a retail seller of flooring materials.

Based on the foregoing, we hold that Smith Floors does not produce, purchase, or sell merchandise within the meaning of section 1.471-1, Income Tax Regs.  Smith Floors' practice of purchasing the flooring materials for a particular job is incidental and secondary to Smith Floors' provision of flooring installation services.  Accordingly, considering all of the facts and circumstances of the instant case, we hold that respondent's

determination that Smith Floors is required to use the accrual method of accounting was an abuse of discretion.

We recognize that the cash method of accounting may result in mismatching for income tax purposes when an expense is incurred in one taxable period and the related income is not realized until a later period. See RLC Indus. Co. v. Commissioner, 98 T.C. 457, 493 (1992), affd. 58 F.3d 413 (9th Cir. 1995). Nonetheless, some mismatching of income and expense is tolerated under the law governing income tax accounting if the taxpayer uses the cash method of accounting consistently and makes no attempt to prepay expenses unreasonably or stockpile supplies at the end of the taxable year. See Ansley-Sheppard-Burgess Co. v. Commissioner, supra at 375; Van Raden v. Commissioner, 71 T.C. 1083, 1104 (1979), affd. 650 F.2d 1046 (9th Cir. 1981).

In the instant case, Smith Floors has consistently used the cash method of accounting for tax purposes as permitted under section 446(c). The cash method of accounting for tax purposes is widely used throughout the contracting industry. See RACMP Enters., Inc. v. Commissioner, supra at 232, and cases cited therein. Furthermore, there is no evidence that Smith Floors ever attempted to prepay expenses unreasonably or accumulate excess supplies at the end of its taxable year. See RACMP Enters., Inc. v. Commissioner, supra at 233; Ansley-Sheppard-

Burgess Co. v. Commissioner, supra at 375.  Considering these

factors, we see no justification for respondent's determination

that Smith Floors must use the accrual method of accounting.[3]

To reflect the foregoing,

Decision will be entered

pursuant to Rule 155.

---

[3]  Because we have already concluded that Smith Floors was not required to use inventories, Smith Floors is not obliged to satisfy the substantial-identity-of-results test in this case. See Ansley-Sheppard-Burgess Co. Commissioner, supra at 377.